# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

EDWAN THURMOND,

    *Petitioner*,

vs.

ROBERT LEGRAND, *et al.*,

    *Respondents*.

3:09-cv-00401-RCJ-WGC

ORDER

    This habeas matter under 28 U.S.C. § 2254 comes before the Court for a final decision on the grounds that remain.

## *Background*

    Petitioner Edwan Thurmond challenges his Nevada state conviction, pursuant to a jury verdict, of three counts of robbery with the use of a deadly weapon and two counts of conspiracy to commit robbery. Petitioner challenged the conviction on direct appeal and state post-conviction review.

## *Standard of Review*

    The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating state-court rulings that is "difficult to meet" and "which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that a decision was incorrect.

131 S.Ct. at 1411.  Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court based on the record presented to the state courts; or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  131 S.Ct. at 1398-1401.

A state court decision on the merits is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result.  *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003).  A decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions.  *Id.*  Indeed, the Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them.  *Id.*  Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous."  540 U.S. at 16.  For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable."  *E.g.,* *Mitchell*, 540 U.S. at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review.  *E.g.,* *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004).  This clause requires that the federal courts "must be particularly deferential" to state court factual determinations.  *Id*.  The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous."  393 F.3d at 973.  Rather, AEDPA requires substantially more deference to the state court's determination:

1   . . . . [I]n concluding that a state-court finding is unsupported by
2   substantial evidence in the state-court record, it is not enough that
    we would reverse in similar circumstances if this were an appeal
3   from a district court decision. Rather, we must be convinced that
    an appellate panel, applying the normal standards of appellate
4   review, could not reasonably conclude that the finding is
    supported by the record.

5   *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

6       Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct

7   unless rebutted by clear and convincing evidence.

8       The petitioner bears the burden of proving by a preponderance of the evidence that

9   he is entitled to habeas relief. *Pinholster*, 131 S.Ct. at 1398.

10   ***Discussion***

11   ***Ground 7: Availability of Wiretap Tapes During Jury Deliberation***[1]

12       In Ground 7 of the second amended petition (#21), petitioner alleges that he was

13   denied rights to confrontation, due process of law and a fair trial under the Fifth, Sixth and

14   Fourteenth Amendments when the jury was allowed to deliberate while in possession of audio

15   recordings and transcripts of wiretapped conversations that, while the jury heard portions

16   during trial, "were never properly admitted into evidence and were prejudicial to Petitioner as

17   they may have contained information regarding uncharged bad acts."[2]

18       Respondents contend, belatedly, that the claim is unexhausted. The scheduling order

19   in this case required that all procedural defenses be raised together in a single motion to

20   dismiss. See #23, at 1-2. However, under 28 U.S.C. § 2254(b)(3), "[a] State shall not be

21   deemed to have waived the exhaustion requirement or be estopped from reliance upon the

22   requirement unless the State, through counsel, expressly waives the requirement." While

23   respondents have not waived the defense as a matter of substantive law, the Court will

24   _____

25       [1]The Court discusses Ground 2 last. In Ground 2, petitioner alleges that he was denied effective
    assistance of counsel when appellate counsel, *inter alia*, did not raise a number of grounds on direct appeal.
26   To the extent that such claims remain before the Court herein as independent substantive grounds, the Court
    will discuss the underlying substantive grounds first and then refer back to the prior discussion as warranted
27   when discussing Ground 2.

28       [2]#21, at 23.

-3-

proceed to the merits.  It is too late in the district court proceeding at this juncture to potentially be initiating additional proceedings under *Rose v. Lundy*, 455 U.S. 509 (1982), on allegedly unexhausted claims.  An exhaustion defense is capable of being identified on the face of the state and federal pleadings, such that an exhaustion defense should not be embedded 32 pages into an answer following a motion to dismiss.  Respondents instead must comply with the Court's scheduling orders in order to properly present issues for consideration in the district court, whether or not waived otherwise under the substantive law.

Ground 7 as alleged in the federal petition is belied by the state court record.

Petitioner's allegation that the recordings and transcripts never were admitted into evidence at trial is belied by the record.  A disc with wiretap recordings from April 23, 2003, was admitted as State's Exhibit 70, over objection; and transcripts of calls on the disc were admitted without objection as Exhibits 80 through 82.[3]  A disc with wiretap recordings from April 24, 2003, was admitted as State's Exhibit 71 without objection; and transcripts of calls on the disc were admitted as Exhibits 83 through 85, over objection.[4]

Petitioner bases his allegation that evidence that was not admitted nonetheless went to the jury upon a reference to a purported Exhibit "Z1" at lines 20-21, page 37, of the February 3, 2005, trial transcript.  He urges that this Exhibit "Z1" "was the master with all the unredacted recordings, but it ended up in the jury room anyway."[5]  The claim thus is grounded on this allegedly unredacted purported Exhibit "Z1" with possible other crimes evidence.

On the cited page of the transcript, the jury had just returned to the courtroom off a break.  Prior to the break, the State had played Exhibit 70 and published the associated transcripts.[6]  The State then played a recording and published a transcript of April 24, 2003, recorded telephone conversation between Thurmond and a Tavares Chandler, which

---

[3]#32-6, Ex. 66A, at 141-42; #32-7, Ex. 67, at 7-8.  Petitioner represented himself at trial.

[4]#32-6, Ex. 66A, at 146-47; #32-7, Ex. 67, at 8-23.

[5]#54, at 21.

[6]#32-7, Ex. 67, at 18-21.

-4-

corresponded to the Exhibit 71 and associated transcripts admitted previously.[7]  Immediately following the break, the prosecutor refers – in the passage relied upon by petitioner to establish the existence of Exhibit "Z1" – to playing an exhibit "which has been previously admitted,"and no objection was made that the exhibit had not been admitted.  An audio was played, and the prosecutor then played a video without sound from an earlier July 10, 2002, robbery.  The video showed Thurmond at the scene of the earlier robbery on a cell phone.[8]  It appears that the prosecutor was juxtaposing a recording of an April 24, 2003, conversation at an aborted robbery where another accomplice was reporting details back to Thurmond at another location with a videotape of Thurmond himself playing the same role of relaying information from the scene of an earlier July 10, 2002, robbery.

It thus appears that petitioner's "mystery" Exhibit "Z1" was Exhibit 71, the disc of the April 24, 2003, wiretap recordings that was admitted into evidence without objection.  What appears as "Z1" on the extant copy of the transcript either is "71" from a decade old condensed transcript copied multiple times over – with the small sometimes misshapen letters and numbers often requiring effort to read – or just a simple typographical error.[9]  What the isolated purported "Z1" reference is not is a basis for a viable federal habeas claim.  "Clutching at straws" does not even begin to describe petitioner's argument in this regard.

There is no record support for either petitioner's allegation that an exhibit was taken to the jury room without being admitted into evidence or his conjecture that such a nonexistent extra-record exhibit "may" have included other crimes evidence.  The record reflects that the exhibits that clearly were introduced into evidence were selected by the State to avoid

---

[7]Compare #32-6, Ex. 66A, at 146-47 (describing what recorded conversation was on the exhibit), with #32-7, Ex. 67, at 21-23 (describing what recorded conversation was being played).

[8]#32-7, Ex. 67, at 37-38.

[9]See, e.g., #32-7, Ex. 67, at 3, line 24; 4, line 24; 7, line 7; 8, line 7 (other 7's appear differently from one another apparently depending upon whether there is an excess or an absence of copy toner on the old transcript copy at that particular point).  Other numbers also have widely varying appearances across the transcript, sometimes clearly legible, sometimes not, again apparently depending on how much toner was deposited at that point on the copy and/or where stray marks on the photocopied transcripts happen to fall.

1   presentation of other crimes evidence, following a hearing on a motion to suppress directed

2   to the wiretap evidence.[10]

3       Accordingly, following a *de novo* review, Ground 7 does not provide a basis for federal

4   habeas relief.[11]

5       **Ground 8: Sufficiency of the Evidence**

6       In Ground 8, petitioner alleges that he was denied rights to due process and a fair trial

7   in violation of the Fifth, Sixth and Fourteenth Amendments because there was insufficient

8   evidence to convict him of conspiracy to commit robbery.  Petitioner alleges, *inter alia*, as

9   follows in the ground:

10          . . . The prosecution's theory is that Petitioner is guilty of
          the conspiracy with an unknown individual who both allegedly
11          participated in a robbery of PT's bar.  The prosecution never
          charged or revealed the name of the "unknown" person.
12          According to the prosecution there was no need to prove an
          agreement between Petitioner and the unknown individual.

13
            Because the evidence failed to establish Petitioner and the
14          unknown individual agreed to commit the crime of robbery,
          Petitioner's conviction for conspiracy to commit robbery with use
15          of a deadly weapon should be vacated.

16   #21, at 25.

17       Ground 8 necessarily is directed to petitioner's conviction only of the conspiracy charge

18   in Count I of the information.  Count I charged that petitioner conspired with an unidentified

19   individual to commit robbery with regard to the robberies charged in Counts 2 through 4 of the

20   information, which charged three counts of robbery at the PT's Bar in question on July 10,

21   2002.  Ground 8 therefore has no application to petitioner's conviction of the conspiracy

22   charge in Count V of the information, which charged that he conspired with Tavaras Chandler

23   to commit a robbery of two United Coin Company employees planned instead on April 24,

24   2003, at a different location.

25

26       [10]#32-4, Ex. 65, at 18-32.

27       [11]The portions of the trial transcript cited in the discussion at notes 6-7 also belie petitioner's different
    allegation in state court that the recordings and transcripts were admitted into evidence but not played and
28   published to the jury during the evidentiary presentation.

1    The Court will conduct a *de novo* review of Ground 8.  Respondents do not direct the

2    Court to a decision on the merits of this substantive claim of insufficiency of the evidence.

3    They do not raise a cogent exhaustion defense to the substantive claim,[12] which apparently

4    was included in the state petition.  Respondents have not interposed any procedural default

5    defense to the substantive claim, which was not addressed on direct appeal.  The scheduling

6    order required that all procedural defenses be raised in a single motion to dismiss; and any

7    such procedural default defense therefore now is waived.  *See, e.g., Morrison v. Mahoney*,

8    399 F.3d 1042, 1046 (9th Cir. 2005)("*Unless a court has ordered otherwise*, separate motions

9    to dismiss may be filed asserting different affirmative defenses.")(emphasis added).  *De novo*

10   review therefore is required, because there is no state court decision on the merits of the

11   substantive claim but the claim appears to be exhausted and not subject to a viable

12   procedural default defense.

13       On a challenge to the sufficiency of the evidence, the habeas petitioner faces a

14   "considerable hurdle."  *Davis v. Woodford*, 333 F.3d 982, 992 (9th Cir. 2003).  Under the

15   standard announced in *Jackson v. Virginia*, 443 U.S. 307 (1979), the jury's verdict must stand

16   if, after viewing the evidence in the light most favorable to the prosecution, any rational trier

17   of fact could have found the essential elements of the offense beyond a reasonable doubt.

18   *E.g., Davis*, 333 F.3d at 992.  Accordingly, the reviewing court, when faced with a record of

19   historical facts that supports conflicting inferences, must presume that the trier of fact

20   resolved any such conflicts in favor of the prosecution and defer to that resolution, even if the

21   resolution by the state court trier of fact of specific conflicts does not affirmatively appear in

22

23

24       [12]Respondents initially state that it appears that petitioner presented the claim as a substantive claim in his state petition.  They then request that the Court find the claim unexhausted to the extent that the claim alleges only ineffective assistance of appellate counsel for failure to raise the claim.  #57, at 33.  At the very end of their argument, respondents request that the Court find "the claim"unexhausted if the Court finds the state petition failed to present "this claim."  *Id.*, at 34.  To the extent, if any, that respondents are challenging the exhaustion of the substantive claim – particularly at this late juncture – respondents must be more clear in the response.  Moreover, the proper point to raise the defense was in the prior motion to dismiss.

25

26

27

28       Regarding the belated assertion of an exhaustion defense as to the ineffective-assistance claim, it would appear instead that that claim – discussed *infra* – was exhausted.  See #33-38, Ex. 128, at 12.

1  the record. *Id.* The *Jackson* standard is applied with reference to the substantive elements
2  of the criminal offense as defined by state law. *E.g., Davis*, 333 F.3d at 992.

3      Petitioner has not carried his burden on federal habeas review of demonstrating that
4  there was insufficient evidence to support his conspiracy conviction on Count I. Petitioner has
5  presented no apposite authority establishing that the State was required to prove the identity
6  of the other individual or individuals in order to establish the existence of the conspiracy.
7  Evidence supporting the conspiracy conviction included, *inter alia*: (a) a videotape showing
8  Thurmond at the scene at the time of the July 10, 2002, robbery on his cell phone;[13] (b) the
9  recovery of money bags stolen during the robbery and clothes matching the description of
10 clothes worn by the armed assailant during the July 10, 2002, robbery from Thurmond's
11 vehicle after the robbery on July 10, 2002;[14] (c) Thurmond's July 10, 2002, request to an
12 employer to provide him an alibi;[15] (d) Thurmond's later statements in wiretapped telephone
13 conversations describing his role at a robbery scene of providing intelligence by phone from
14 inside an establishment;[16] and (e) Thurmond's later confession to the police that he was
15 involved in the July 10, 2002, robbery.[17] Petitioner proceeds on the erroneous premise that
16 he can be convicted of conspiracy based on only direct evidence of a conversation with an
17 identified specific individual agreeing to commit the robbery. He instead can be convicted,
18 as he was, based upon, *inter alia*, circumstantial evidence of the conspiracy.[18]

19      On *de novo* review, Ground 8 thus does not provide a basis for habeas relief.

20

21      [13]E.g., #32-7, Ex. 67, at 37-39.

22      [14]#32-6, Ex. 66A, at 121.

23      [15]#32-6, Ex. 66A, at 79-95.

24      [16]See #32-8, Ex. 68, at 54-55 (closing argument).

25      [17]E.g., #32-6, Ex. 66A, at 155. The transcript does not recite the recorded confession in full detail.
   See also #32-8, Ex. 68, at 45, 54 & 57-58 (closing argument).
26

27      [18]In the first reply on this ground, petitioner sought to present constitutional claims of denial of a right
   of confrontation and of jury charge error. See #54, at 22-23. A petitioner cannot pursue claims in a reply that
   are not alleged in the ground in the amended petition. *E.g., Cacoperdo v. Demosthenes*, 37 F.3d 504, 507
28 (9th Cir. 1994).

***Ground 9(b): Allegedly Defective Criminal Complaint***

In Ground 9(b) of the second amended petition, petitioner alleges that he was denied rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments when he was charged by an allegedly defective and illegal criminal complaint. He alleges that the criminal complaint was defective because the complaint alleged a violation of a nonexistent statute, N.R.S. 103.165, rather than N.R.S. 193.165, denying him his right to be advised of the charges against him. Following the prior ruling made on this claim on respondents' motion to dismiss, the Court reviews the claim *de novo* as to issues of law.[19]

While the Supreme Court of Nevada did not address the substantive claim directly, the court did address petitioner's related claim of ineffective assistance of appellate counsel. The court concluded, *inter alia*, as follows:

> . . . [A]ppellant claimed that his appellate counsel was ineffective for failing to argue that the information was unconstitutionally vague. The information and the amended information listed the statute for the deadly weapon enhancement as "NRS 199.165" and the judgment of conviction listed the statute for the deadly weapon enhancement as "NRS 103.165." As the correct statute for the deadly weapon enhancement is NRS 193.165, appellant claimed that he was not given proper notice of the deadly weapon enhancement. Appellant further claimed that vagueness of the deadly weapon enhancement violated separation of powers.
>
> Appellant failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced. Pursuant to NRS 173.075(3), error in the citations in the information is not a ground for dismissal or reversal of conviction if the error "did not mislead the defendant to his prejudice." The correct statute for the deadly weapon enhancement was listed in the complaint. Further, during the *Faretta* canvass, the district court explained in detail how the deadly weapon enhancement would affect the sentence and gave appellant a hypothetical example of how the sentencing would work should appellant be found guilty. *Faretta v. California*, 422 U.S. 806 (1975). Appellant responded that he understood the penalties he faced, still wanted to represent himself, and believed he had sufficient time to learn how best to defend himself. As such, appellant failed to demonstrate that he was prejudiced by the error in the information. Further, appellant failed to demonstrate that the deadly weapon enhancement

---

[19]#48, at 10.

-9-

violated separation of powers. At the evidentiary hearing, appellant's appellate counsel testified that in her opinion the [statutes] were not vague; therefore, she did not raise this issue. "Tactical decisions [of counsel] are virtually unchallengeable absent extraordinary circumstances" and appellant failed to demonstrate any such circumstances here. *See Ford*, 105 Nev. at 853, 784 P.2d at 953.   The district court concluded that appellate counsel was not ineffective for failing to raise this issue on direct appeal and substantial evidence supports that conclusion.  Therefore, the district court did not err in denying this claim.[FN2]

[FN2]  We note that an amended judgment of conviction was entered on January 18, 2007. The amended judgment of conviction lists the correct statute, NRS 193.165, for the deadly weapon enhancement.

#33-38, Ex. 128, at 7-8.

Review on this claim is *de novo* as to issues of law and mixed questions of law and fact.  However, the factual findings made by the state courts are subject to deferential review under AEDPA.  *See Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002).  This deferential standard of review of historical factual determinations extends to factual findings made by state appellate courts based on a review of the record.  *See, e.g., Deere v. Cullen*, 718 F.3d 1124, 1144 (9th Cir. 2013), *petition for certiorari filed* (May 12, 2014).

The state supreme court found that: (a) the earlier complaint listed the correct statute for the deadly weapon enhancement but the later information and information did not; (b) the state district court explained in detail to petitioner personally during the *Faretta* canvass how the deadly weapon enhancement would affect the sentence and gave him a hypothetical example of how the sentencing would work if he was found guilty; (c) petitioner responded that he understood the penalties he faced, still wanted to represent himself, and believed he had sufficient time to learn how best to defend himself; and (d) petitioner had failed to demonstrate that he was prejudiced by the error in the information.

Petitioner neither has shown that the state supreme court's factual determinations constituted an unreasonable determination of fact nor has he rebutted the factual findings with clear and convincing evidence.  The court's findings of historical fact thus are presumed to be correct.

1    The state supreme court's factual finding that the complaint correctly cited the deadly

2    weapon enhancement statute – which is fully supported by the record – negates the claim that

3    petitioner actually alleged in Ground 9(b).  Petitioner alleged specifically that the complaint

4    did not cite the correct statute, N.R.S. 193.165, but the complaint in fact did.[20]

5    Petitioner in any event is not entitled to relief with regard to the typographical citation

6    error as to the state statute in the information and amended information.  The affirmative

7    requirements of the Federal Rules of Criminal Procedure of course are not binding on the

8    States.  However, it is significant when the Rules expressly state that an error is not a basis

9    for reversal of a conviction.  Notably, Rule 7(c)(2) provides:

10

11    **Citation Error.**  Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction.

12

13    Fed. R. Crim Pro. 7(c)(2).  The Advisory Committee Notes, dating back to the adoption of the

14    Rules in 1944, reflect that the rule is based upon long-established law that a statutory citation

15    is not part of the charging instrument and that a conviction thus can be sustained on the basis

16    of a statute other than the one cited.  *See, e.g., United States v. Hutcheson*, 312 U.S. 219,

17    229 (1941).  Petitioner cites no apposite governing constitutional case authority to the

18    contrary.  Based upon the findings of historical fact by the state supreme court, petitioner

19    cannot demonstrate the he was misled and thereby prejudiced by the typographical error in

20    the statutory citation on the weapon enhancement.  He clearly was on notice in the state

21    district court that he was being charged with the weapon enhancement, on what factual basis,

22    and with what potential exposure.[21]

23    Ground 9(b) therefore does not provide a basis for federal habeas relief.

24

25    [20]See #27-2, Ex. 2.

26

27    [21]See also #57, at 35-36 (setting out relevant portion of *Faretta* canvass).  In the first reply, petitioner sought to pursue a number claims that either are part of the previously dismissed Ground 9(a) or that simply

28    are not contained within Ground 9 in the pleadings at all.  Again, petitioner may not pursue constitutional claims in a reply that were not alleged in the ground in the amended petition.  *Cacoperdo, supra.*

1

*Ground 11: Alleged Failure to Record Proceedings*

2    In Ground 11, petitioner alleges that he was denied rights to due process and a fair trial

3    in violation of the Fifth, Sixth, and Fourteenth Amendments because the state trial court

4    allegedly failed to properly record and transcribe all relevant judicial proceedings.  He alleges

5    that: (a) "the court failed to record or include reports/briefs entered into record;" (b) the

6    transcripts failed to include "information pertaining to several bench conferences held in the

7    courtroom on February 1, 2005;" (c) the court "was made aware of possible jury tampering

8    occurring in the hallway outside the courtroom by Detective Clifford Mogg and other unknown

9    detectives or police officers (February 2, 2005);" (d) "[i]t appears the jury was also subjected

10    to a written 'brief' which was ultimately ordered 'destroyed' by the trial judge;" (e) the court

11    nonetheless "failed to question the jurors of their possible exposure to irrelevant evidence;"

12    and (f) the court "failed to properly record the above into the official court transcripts."[22]

13    Respondents have not directed the Court to a decision on the merits of the substantive

14    claim in Ground 11 and otherwise has not interposed any defense based upon lack of

15    exhaustion or procedural default.  The Court accordingly reviews the claim *de novo*.

16    Petitioner has presented a wholly bare claim of off-record impropriety with no

17    corroboration.  Petitioner cites to no on-record efforts where he in fact sought to establish a

18    contemporaneous record that material was not being made of record and/or where he

19    otherwise sought to memorialize on the record what he alleges was transpiring.  There is no

20    constitutional requirement in particular that bench conferences in a state criminal case be

21    recorded.  It was incumbent upon petitioner – who elected to represent himself at trial – to

22    later make a record of any material discussion during a bench conference on a break outside

23    the presence of the jury as to which he wished to make a record for review.  If he failed to do

24

25    _____

[22]Petitioner again pursues extensive constitutional claims and factual allegations in his first reply that

26    are not included in Ground 11 in the second amended petition.  These include allegations, *inter alia*, that

    petitioner was not present at his sentencing because the written judgment of conviction was filed later, that he

27    had a right to counsel at sentencing, and that later amended judgments were entered erroneously.  Petitioner,

    again, may not successfully pursue claims in a federal reply that were not presented in the amended petition.

28    *Cacoperdo, supra.*

-12-

1    so with regard to bench conferences and with regard to his other accusations, then he is left

2    with only bare, uncorroborated accusations that have no even indirect record support.

3         For example, a bare allegation by a convicted defendant facing a substantial sentence

4    that jurors were given an extra-record brief that was destroyed by the trial judge presents no

5    basis for relief.  Petitioner apparently premises this claim on the following exchange:

6              THE DEFENDANT: And it didn't specifically put all the
               facts in the counts. [Petitioner is arguing outside the presence of
7              the jury for dismissal of the indictment as defective.]

8              THE COURT: It's sufficient, sir.  I can tell you this is what
               we've been charging these things for 25 years, to my knowledge,
9              and I don't think it's going to change.  I find that your argument
               lacks merit.
10
               Now Mr. Bailiff, I want to see this brief or report you made
11             mention of.

12             Mr. Thurmond, I don't want you to have an item like this
               fork.   I'll give you some clips or something to keep your
13             documents.

14             THE DEFENDANT: I can't have those in the jail, Your
               Honor.
15
               THE COURT: Well, you can't have this fork here.  Now, if
16             they need to trade off when you go to jail, then I'd rather have a
               clip than a fork.
17
               Is there anything else outside the presence of the jury to
18             discuss?

19             MR. DIGIACOMO: No, Judge.

20             THE COURT:  Mr. Thurmond?

21             THE DEFENDANT: *No, Judge.*

22   #32-6, Ex. 66A, at 105-06 (electronic docketing page 29)(emphasis added).

23         It thus appears that petitioner's mystery brief – like the mystery exhibit "Z1" that formed

24   the alleged basis for Ground 7 – represents the efforts of a convicted defendant who has

25   combed through a cold record with an active imagination.  At the time, the trial judge's

26   statement to the bailiff that he wanted "to see this brief or report you made mention of" was

27   nothing more than a passing innocuous reference to some unidentified brief or report that the

28   bailiff mentioned in some unidentified context.  Years later on state and federal post-

-13-

1   conviction review, the unidentified "brief or report" becomes a "written brief" to which the jury

2   was subjected and "which was ultimately ordered 'destroyed' by the trial judge." Yet, at the

3   time that the otherwise innocuous passing reference was made at trial, petitioner said "No,

4   Judge" when asked whether there was anything else to discuss.

5        The bare and conjectural Ground 11 does not provide a basis for federal habeas relief.

6        **Ground 12: Allegedly Defective Amended Information**

7        In Ground 12, petitioner alleges that he was denied rights to due process and a fair trial

8   under the Fifth, Sixth and Fourteenth Amendments because an allegedly defective amended

9   information permitted the State to change the theory of prosecution mid-trial.[23]

10       Petitioner grounds this claim on alleged defects in the following language included

11  within Counts 2 through 4 of the amended information:

12           . . . the defendant being responsible under one or more of
         the following principles of criminal liability, to wit: (1) by Defendant
13       EDWAN THURMOND and unknown conspirators aiding or
         abetting in the commission of the crime by accompanying other
14       accomplices to the crime scene where they directly or indirectly
         provided counsel and encouragement to others to commit said
15       act, defendant and conspirators being present with the other
         accomplices during the offense and supporting the actions of the
16       others by words and/or acts . . . .

17  E.g., #30-8, Ex. 38, at 2, lines 11-17.

18       Petitioner first urges as follows:

19           As noted the charged offense (Robbery) makes no
         mention of use of a deadly weapon. The Robbery statute, NRS
20       200.380, makes no reference to deadly weapon. Petitioner did
         not have notice of what conduct was prohibited. (Weapon was
21       never admitted into evidence.)

22  #21, at 34.

23       Petitioner thus apparently repeats his argument that the charging documents failed to

24  provide adequate notice of the deadly weapon enhancement because of a statutory citation

25  error. As discussed *supra* regarding Ground 9(b), such a constitutional claim is without merit.

26

27  _____

28       [23]Respondents appear to acknowledge that the state supreme court did not decide the merits of the
     independent substantive claim and that the claim thus is reviewed *de novo* on federal habeas review.

-14-

1     Petitioner otherwise can claim that he had no notice that he was being charged with

2  robbery with the use of a deadly weapon only by ignoring the multiple express references in

3  each count to use of a deadly weapon.  For example, Count 2 of the similarly-structured

4  counts alleged in pertinent part:

5               COUNT 2 – ROBBERY **WITH USE OF A DEADLY WEAPON**

6               Defendant EDWAN THURMOND did, on or about July 10,
       2002, then and there wilfully, unlawfully, and feloniously take
7       personal property, to wit: lawful money of the United States, from
       the person of MATTHEW KITCHEN, or in his presence, by
8       means of force or violence or fear of injury to, and without the
       consent and against the will of the said MATTHEW KITCHEN,
9       said Defendant **using a deadly weapon, to wit: a firearm** during
       the commission of said crime . . . [the language that petitioner
10      instead focuses Ground 12 on, which was quoted above, then
       follows, along with additional language discussed further *infra*];
11      and/or (2) by conspiring with others to commit the offense of
       robbery **with the use of a deadly weapon**, whereby each co-
12      offender is vicariously liable for the foreseeable acts of each other
       when the acts were in furtherance of the conspiracy.
13
   #30-8, Ex. 38, at 2 (bold emphasis added).
14
15      Petitioner's claim that he was not provided notice of what conduct was prohibited as

16  to the robbery being with the use of a deadly weapon thus is wholly belied by the record.[24]

17      Petitioner further urges as follows:

18               By allowing the vague charging document, the State's
       burden of proof was lessened, they did not have to prove which
19      person actually committed the offenses and which person "aided
       and abetted."  Also, Petitioner was the only person charged as a
20      "conspirator."  It takes two or more persons to conspire to commit
       an offense.

21               As a result, the prosecution's burden of proof was
22      lessened and they were allowed to change theory of prosecution
       based on the vague Amended Information that failed to apprize
23      Petitioner of the conduct/offense he supposedly committed.  The
       Conviction should be overturned and Counts 1 2 3 & 4 should be
24      dismissed.

25  #21, at 34.

26  _____

27      [24]The allegation that a weapon was not admitted into evidence has nothing to do with the adequacy of
   the charging instrument.  Nor is the State required to admit a weapon in evidence to prove that the defendant
28  and/or his accomplices used a deadly weapon.  The victims' testimony as to the use of the firearm during the
   robbery by one of the accomplices was sufficient to sustain a conviction on the weapon enhancement.

-15-

1   Petitioner, again, can claim that he had no notice of the conduct and offense that he

2   committed only by ignoring express language in each count.  For example, Count 2 of the

3   similarly-structured counts alleged in pertinent part:

4

5   [the language below immediately followed the aiding and
    abetting paragraph (1) language that is focused upon by
    petitioner and which was quoted previously, which concluded with

6   ". . . defendant and conspirators being present with the other
    accomplices during the offense and supporting the actions of the

7   others by words, and/or acts"]; Defendant EDWAN THURMOND
    entering PT's BAR located at 8484 West Lake Mead to act as a

8   lookout, and/or by providing a means of transportation to his
    accomplices from the crime scene to prevent detection by law

9   enforcement personnel, and/or by providing counsel and
    encouragement and/or information to his accomplices regarding

10  the whereabouts of victims MATTHEW KITCHEN and ROY
    DESAMITO;  Defendant  EDWAN  THURMOND  and  his

11  accomplices aiding and abetting and acting in concert throughout;
    and/or (2) by conspiring with others to commit the offense of

12  robbery with use of a deadly weapon, whereby each co-offender
    is vicariously liable for the foreseeable acts of each other when

13  the acts were in furtherance of the conspiracy.

14  #30-8, Ex. 38, at 3.

15  Petitioner clearly was placed on notice as to his alleged role in the offenses by the

16  charging instrument.  His claim to the contrary that the charging instrument was impermissibly

17  vague in violation of the Due Process Clause is frivolous.

18  Petitioner's claim that the amended information lessened the State's burden of proof

19  also is frivolous.

20  Petitioner's claim that the State was required to specifically allege and prove the

21  identity of his co-conspirators and/or that he could be tried only together with his co-

22  conspirators also is frivolous.

23  Petitioner's further bare allegation that the amended information allowed the State to

24  change the theory of the prosecution "MID-TRIAL" as he alleges in Ground 12 finds no

25  support in the trial record.  As the Supreme Court of Nevada found in discussing a related

26  claim of ineffective assistance of appellate counsel:

27  . . . . A review of the record reveals that the State's theory
    was that appellant planned and helped to carry out the robberies.

28  The State's theory of the crime was consistent throughout the trial

-16-

1       and the charging documents provided notice of that theory. . . . .

2   #33-38, Ex. 128, at 8.  As discussed, *supra*, with regard to Ground 9(b), state court factual

3   findings, including findings of appellate courts based upon a review of the record, are subject

4   to deferential review under AEDPA.[25]  Petitioner's conclusory allegations fail to establish that

5   the state supreme court's factual finding in this regard constituted an unreasonable

6   determination of historical fact.  Nor has petitioner presented clear and convincing evidence

7   overcoming the presumption of correctness attached to the state supreme court's factual

8   finding.  That finding further is consistent with this Court's assessment of the record reflected

9   by the trial transcript.

10      Ground 12, on a *de novo* review as to the law, therefore does not provide a basis for

11  federal habeas relief.[26]

12  ***Ground 15: Flight Instruction***

13      In Ground 15, petitioner alleges that he was denied rights to due process and a fair trial

14  in violation of the Fifth, Sixth, and Fourteenth Amendments when the trial court gave a flight

15  instruction that allegedly was not supported by any trial evidence.

16      Respondents have not directed the Court to a decision on the merits of this substantive

17  claim by the Supreme Court of Nevada.[27]  Respondents have not raised an exhaustion

18

19      [25]See text, *supra*, at 10.

20      [26]The Court notes that the language of the amended information was no different than the original
21  information with regard to the issues raised by petitioner in Ground 12.  The amended information made other
    changes and was received four months before trial – without objection by the then-present petitioner who was
22  representing himself.  See #30-9, Ex. 39, at 3-4.

23      Petitioner again pursues claims and factual allegations in his first reply that are not in Ground 12 in
    the second amended petition.  For example, petitioner presents allegations regarding Count 5 when Ground
24  12 clearly instead is directed to Counts 1 through 4.  Petitioner, again, may not successfully pursue claims in
    a reply that were not presented in the ground in the amended petition.  *Cacoperdo, supra.*

25      [27]The response order in this matter directed respondents to "specifically cite to and address the
26  applicable state court written decision . . ., if any, regarding each claim within the response as to that claim."
    #23, at 2.  The Court makes such a directive of course because merits review under AEDPA generally is not
27  *de novo* review but instead consists of deferential review of a decision by the state's highest court.  If there is
    no such merits decision on the claim, then the immediate question that should arise is whether the claim is
28                                                                                                    (continued...)

defense as to this claim, and respondents have waived any applicable procedural default
defense by not raising that defense to this claim in the motion to dismiss.   The Court
accordingly reviews the ground *de novo* as to questions of law.

Jury Instruction No. 18 read as follows:

> The flight of a person after the commission of a crime is
> not sufficient in itself to establish guilt; however, if flight is proved,
> it is circumstantial evidence in determining guilt or innocence.
>
> The essence of flight embodies the idea of deliberately
> going away with consciousness of guilt and for the purpose of
> avoiding apprehension or prosecution.  The weight to which such
> circumstance is entitled is a matter for the jury to determine.

#32-9, Ex. 69, at electronic docketing page 22.

Petitioner alleges that "[t]he jury instruction was modified by the Court, in that the word
'immediately' was removed (prior to 'after' in [the] first sentence.)."  The above statement of
the instruction comes from the written jury instructions in the state court record.  Petitioner
interposed no objection to the instructions, including specifically the flight instruction in
Instruction No. 18.[28]  There was no surreptitious "modification" of the instruction reflected by
the state court record.  Nor was any objection raised in the state district court that a charge
had been modified.  Nor does there appear to be any conceivable viable basis for a federal
constitutional due process claim with regard to petitioner's *post hoc* suggestion that the
charge was "modified" from some other prior charge.  The charge as given was the same as
corresponding charges given in other Nevada criminal cases.  *See, e.g., Rodriguez v. State*,
2009 WL 1437816, at *2 (Nev. 2009)(unpublished).  The word "immediately" was included as

_____

[27](...continued)
unexhausted or perhaps instead procedurally defaulted.  Respondents refer to a decision of the Supreme
Court of Nevada rejecting a claim of ineffective assistance of appellate counsel for failing to raise certain
alleged jury instruction errors.  However, addressing an ineffective-assistance claim does not exhaust an
independent substantive claim.  Petitioner raised the substantive claim in the state district court, but that court
held that all substantive claims were procedurally defaulted. #33-30, Ex. 120, at 12.  The state high court did
not appear to address the substantive claim either on the merits or on the basis of procedural default.  As
discussed in the text, any otherwise viable procedural default defense is waived at this point.

[28]See #32-7, Ex. 67, at 30 (electronic docketing page 10); #32-8, Ex. 68, at 9-11 (electronic docketing
page 5).

-18-

described by petitioner in other Nevada cases.  *See, e,.g. Parker v. State*, 2008 WL 6113451, at *3 (Nev. 2008).  Over and above the fact that the time for petitioner to quibble over jury instruction language was years ago at trial, and he did not do so, there simply is no conceivably viable federal due process claim presented by the variance in language on the instruction.  *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)(alleged variance of instruction from state standard jury instruction did not give rise to a due process violation providing a basis for federal habeas relief).

Nor has petitioner presented apposite federal constitutional authority establishing that a defendant is deprived of due process of law by the giving of the instruction allegedly in the absence of flight evidence.  A state law instructional error again in and of itself does not rise to the level of a federal constitutional deprivation.  *Estelle, supra*.  Nothing in the instruction remotely directed the jury to find for the State on the issue without any supporting evidence.

The Court notes in any event that ample evidence was presented at trial of flight by one of petitioner's accomplices in the July 10, 2002, robbery – including evidence of the assailant carjacking another victim to effectuate his hurried getaway from the crime scene.[29] Just as evidence of a co-conspirator's use of a weapon can be used to prove petitioner's guilt as a principal of robbery with the use of a deadly weapon, the flight of a co-conspirator can be considered by the jury as evidence of consciousness of guilt by the conspirators, including petitioner.  Flight from a scene of a crime may demonstrate consciousness of guilt.  *See, e.g., Matthews v. State*, 94 Nev. 179, 181, 576 P.2d 1125, 1126 (Nev. 1979)(running from the store where the burglary was committed).

Ground 15 does not provide a basis for federal habeas relief.

### Ground 2: Effective Assistance of Appellate Counsel

In Ground 2, which the Court discusses herein out of serial order, petitioner alleges that he was denied effective assistance of counsel when appellate counsel: (a) did not

---

[29]See, e.g., #32-5, Ex. 66, at 47-48 (electronic docketing page 14)(description of the underlying evidence in the State's opening statemetn).

1  "federalize" the claims in federal Grounds 3 through 7 on direct appeal; and (b) failed to raise

2  federal Grounds 1 and 8 through 17[30] on direct appeal.

3      On a claim of ineffective assistance of counsel, a petitioner must satisfy the

4  two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984).  He must demonstrate

5  that: (1) counsel's performance fell below an objective standard of reasonableness; and (2)

6  counsel's defective performance caused actual prejudice.  On the performance prong, the

7  issue is not what counsel might have done differently but rather is whether counsel's

8  decisions were reasonable from his perspective at the time.  The  court starts from a strong

9  presumption that counsel's conduct fell within the wide range of reasonable conduct.  On the

10 prejudice prong, the petitioner must demonstrate a reasonable probability that, but for

11 counsel's unprofessional errors, the result of the proceeding would have been different.  *E.g.,*

12 *Beardslee v. Woodford*, 327 F.3d 799, 807-08 (9th Cir. 2003).

13     When evaluating claims of ineffective assistance of appellate counsel, the performance

14 and prejudice prongs of the *Strickland* standard partially overlap.  *E.g., Bailey v. Newland*, 263

15 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).

16 Effective appellate advocacy requires weeding out weaker issues with less likelihood of

17 success.  The failure to present a weak issue on appeal neither falls below an objective

18 standard of competence nor causes prejudice to the client for the same reason – because the

19 omitted issue has little or no likelihood of success on appeal.  *Id.*

20     While surmounting *Strickland's* high bar is "never an easy task," federal habeas review

21 is "doubly deferential" in a case governed by AEDPA.  In such cases, the reviewing court

22 must take a "highly deferential" look at counsel's performance through the also "highly

23 deferential" lens of § 2254(d).  *Pinholster*, 131 S.Ct. at 1403 & 1410.

24     ***Effective Assistance – Failure to "Federalize" Grounds 3 through 7***

25     The Supreme Court of Nevada rejected the corresponding claim of ineffective

26 assistance of counsel presented to that court on the following grounds:

27 _____

28     [30]As respondents note, there is no Ground 17 in the second amended petition.

-20-

1
2
3
4
5
6
7

> . . . [A]ppellant claimed that his appellate counsel was ineffective for failing to "federalize" the arguments on direct appeal. Appellant claimed that this precluded him from seeking relief in federal court. Appellant failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced. Appellant failed to demonstrate that he would have gained a more favorable standard of review of on direct appeal had his appellate counsel federalized the arguments. <u>See</u> <u>Browning v State</u>, 120 Nev. 347, 365, 91 P.3d 39, 52 (2004). The district court concluded that appellate counsel was not ineffective for failing to federalize appellant's claims on direct appeal and substantial evidence supports that conclusion. Therefore, the district court did not err in denying this claim.

8  #33-38, Ex. 128, at 11.

9   The state supreme court's rejection of this claim was neither contrary to nor an
10  objectively unreasonable application of clearly established federal law.

11   At the outset, petitioner cites no apposite United States Supreme Court precedent
12  clearly establishing that appellate counsel on a state criminal direct appeal provides
13  ineffective assistance of counsel if he does not "federalize" claims on direct appeal specifically
14  to preserve claims for later federal habeas review. Appellate counsel is appointed to seek to
15  secure a reversal on direct appeal, not to seek federal habeas relief. Winning the appeal is
16  the objective, not exhausting claims for federal habeas review. No law clearly established by
17  Supreme Court precedent establishes that appellate counsel's obligations run beyond the
18  proceeding for which he is appointed. Indeed, the focus on the prejudice prong of the
19  *Strickland* analysis would indicate that the proper focus instead is on whether there is a
20  reasonable probability that the result of "the proceeding" – *i.e.*, the direct appeal – would have
21  been different. In the absence of apposite supporting Supreme Court precedent on this point,
22  petitioner simply cannot establish a viable claim on deferential AEDPA review based upon
23  appellate counsel failing to "federalize" claims so that they later may be asserted on federal
24  habeas review.[31]

25
26
27  [31]The Court further notes that Grounds 3 through 6 were dismissed as untimely, not for a failure to
exhaust the claims as federal claims. See #48, at 3-6. Ground 7 was adjudicated on the merits herein as a
28  federal claim. Accordingly, even if ineffective assistance of appellate counsel could be based upon a failure
to preserve claims for federal review, petitioner could not necessarily establish the requisite prejudice herein.

The state supreme court further held that – with respect to the direct appeal itself – petitioner had not demonstrated either deficient performance or resulting prejudice from the failure of appellate counsel to federalize the claims presented on appeal.  That holding was neither contrary to nor an unreasonable application of clearly established federal law.

With regard to federalizing claims in federal Ground 3, appellate counsel raised a claim on direct appeal that the trial court erred by admitting other bad act evidence of a May 19, 2003, robbery conspiracy as to a charge that had been dismissed prior to trial.[32]  Petitioner cannot establish either deficient performance or resulting prejudice – a reasonable probability of a different outcome on direct appeal – from counsel's failure to base the propensity evidence direct appeal claim also on the federal constitution.  *Cf. Alberni v. McDaniel*, 458 F.3d 860, 862-67 (9th Cir. 2006)(United States Supreme Court precedent does not clearly establish that admission of propensity evidence violates due process).  There is not a reasonable probability that the Supreme Court of Nevada would have reached a different outcome on the state law claim that it rejected on the merits on direct appeal if counsel also had invoked federal constitutional law.  Merely federalizing a claim rejected on the merits as a state law claim, with no apposite Supreme Court precedent establishing a right to relief, does not necessarily lead to a greater likelihood of success on the claim on appeal.[33]

With regard to federalizing claims in federal Ground 4, appellate counsel raised a claim on direct appeal that the trial court erred by admitting allegedly inadmissible character evidence of petitioner's prior conviction during trial because some of surveillance detectives mentioned that they worked on a "repeat offenders" unit.[34]  The Supreme Court of Nevada rejected the direct appeal claim on the following basis:

---

[32]See #32-29, Ex. 89, at 5 & 26-37.

[33]The Court notes that Ground 3 in the second amended petition essentially is merely a state law propensity evidence claim – claiming that the state trial court erred in applying state law propensity evidence precedents – under the cover of a generic allegation that the trial court's alleged error violated federal due process protection.  Clearly, the bare invocation of federal due process has no automatic talismanic effect that converts a losing state law claim into a winning federal one.

[34]See #32-29, Ex. 89, at 5 & 38-41.

> . . . Thurmond argues that evidence of prior convictions was improperly admitted at trial through the testimony of several detectives who each briefly mentioned that detectives assigned to a "repeat offenders" unit had participated in the case. Our review of the record reveals that no evidence was admitted that Thurmond had a prior conviction or had even been previously charged with a crime. Further, Thurmond failed to object to this testimony at trial. "Generally, failure to object will preclude appellate review of an issue." We conclude there was no plain error affecting Thurmond's substantial rights to overcome his failure to preserve the issue for appeal.

#33-1, Ex. 92, at 2 (citation footnotes omitted). Federal constitutional claims also are subject to waiver for lack of a contemporaneous objection. A conclusion that generically federalizing an otherwise state law claim that the self-represented Thurmond failed to preserve at trial would not have led to a different outcome on direct appeal was not an objectively unreasonable application of clearly established federal law.[35]

With regard to federalizing claims in federal Ground 5, counsel raised a claim on direct appeal that the trial court erred in denying Thurmond's motion to suppress his statements to investigators due to insufficient *Miranda* warnings.[36] The claim explicitly was premised upon federal law, including *Miranda v. Arizona*, 384 U.S. 436 (1966), and the claim was decided by the state supreme court as based upon federal law.[37] Petitioner therefore cannot establish the initial predicate for the ineffective-assistance claim as to Ground 5, *i.e.*, that appellate counsel failed to federalize the claim on direct appeal. The state supreme court's conclusion that petitioner had demonstrated neither deficient performance nor resulting prejudice thus was not an objectively unreasonable application of clearly established federal law.[38]

/ / / /

---

[35]As respondents note in their answer, merely because an officer or officers were assigned to a repeat offenders unit does not establish a necessary inference that petitioner had a prior conviction, as they merely could have been assisting surveillance in the case. Thurmond's failure to object to the passing brief references at trial leaves a hardly compelling record of a denial of federal due process.

[36]See #32-29, Ex. 89, at 5 & 41-43.

[37]#33-1, Ex. 92, at 2-4.

[38]Petitioner seeks to argue additional substantive issues over and above the *Miranda* issue in his first reply with regard to this portion of the ineffective-assistance claim, which he may not do. *Cacoperdo, supra.*

1    With regard to federalizing claims in federal Ground 6, counsel raised a claim on direct

2  appeal that the trial court erred by denying his motion to suppress evidence seized from his

3  vehicle as the fruit of an allegedly unlawful search.  Here, too, the claim presented on direct

4  appeal explicitly was premised upon federal law, applying the Fourth Amendment.[39]  Petitioner

5  therefore cannot establish the initial predicate for the ineffective-assistance claim as to

6  Ground 6, *i.e.*, that appellate counsel failed to federalize the claim on direct appeal.  The state

7  supreme court's conclusion that petitioner had demonstrated neither deficient performance

8  nor resulting prejudice thus was not an objectively unreasonable application of clearly

9  established federal law.[40]

10    With regard to federalizing claims in federal Ground 7, no corresponding state or

11  federal claim appears to have been presented on direct appeal.  This Court has held herein

12  on a *de novo* review that the underlying substantive claim in Ground 7 is belied by the state

13  court record and thus is wholly without merit.[41]  Accordingly, the state supreme court's holding

14  that appellate counsel was not ineffective with respect to such a claim, federalized or not, was

15  not an objectively unreasonable application of clearly established federal law.

16    Ground 2 therefore does not provide a basis for federal habeas relief with regard to

17  petitioner's claim that counsel was ineffective for failing to federalize claims corresponding to

18  federal Grounds 3 through 7 on direct appeal.  The Court turns to petitioner's claims of

19  ineffective assistance of counsel based upon a failure to raise other specified grounds.

---

21    [39]#32-29, Ex. 89, at 43-46.

22    [40]Respondents assert that this Court dismissed Ground 6 as not cognizable under *Stone v. Powell*,
23  428 U.S. 465 (1976).  Respondents contend that petitioner therefore cannot demonstrate prejudice from an
    alleged failure to federalize the claim because the substantive claim is not cognizable on federal habeas
24  review.  The Court, however, dismissed Ground 6 instead as untimely without reaching the cognizability
    issue.  See #48, at 3-6 & 10.  As discussed previously in the text, no clearly established federal law required
25  the state supreme court to conclude that direct appeal counsel could provide ineffective assistance by
    allegedly failing to preserve issues for later federal habeas review.  The court focused instead, as permitted
26  by current governing precedent, instead on whether there was a reasonable probability that the alleged
    deficiency had an effect on the outcome *of the direct appeal*.  In all events, the salient point is that counsel did
27  in fact federalize the claim presented on direct appeal, which wholly undercuts the premise for the IAC claim.

28    [41]See text, *supra*, at 3-6.

-24-

1

***Effective Assistance – Failure to Raise Ground 1***

2

Petitioner alleges that he was denied effective assistance of counsel because appellate

3

counsel did not raise the claims in federal Ground 1 on direct appeal.  In federal Ground 1,

4

petitioner alleges that he was denied rights to counsel, due process and equal protection

5

under the Fifth, Sixth and Fourteenth Amendments when the trial court granted his request

6

to represent himself without holding an allegedly proper *Faretta* canvass and later denied a

7

request for appointment of either counsel or standby counsel.

8

The Supreme Court of Nevada denied the ineffective-assistance claim presented to

9

that court on the following grounds:

10

Standby Counsel

11

. . . [A]ppellant claimed that his appellate counsel was
ineffective for failing to appeal the denial of stand-by counsel after

12

the <u>Faretta</u> canvass. . . . .  Appellant failed to demonstrate that his
appellate counsel was deficient or that he was prejudiced.  Prior

13

to trial, appellant informed the district court that he wanted to
represent himself.  The district court then conducted a <u>Faretta</u>

14

canvass and allowed appellant to represent himself.
Approximately three months later, appellant informed the district

15

court that he wanted standby counsel to help him question
witnesses and with his own testimony.  The district court denied

16

appellant's request for standby counsel.

17

A defendant who waives his right to counsel and chooses
to represent himself does not have a constitutional right to

18

standby counsel.  <u>Harris v. State</u>, 113 Nev. 799, 804, 942 P.2d
151, 155 (1997); <u>accord U.S. v. Kienenberger</u>, 13 F.3d 1354,

19

1356 (9th Cir. 1994); <u>U.S. v. Morrison</u>, 153 F.3d 34, 55 (2nd Cir.
1998). The district court has the discretion to appoint standby

20

counsel to aid in presentation of the defense or in saving the
record for appeal.  <u>Harris</u>, 113 Nev. at 804, 942 P.2d at 155.

21

Appellant failed to demonstrate that the district court abused its
discretion by refusing to appoint standby counsel.  Further,

22

appellant's appellate counsel testified that she looked into the
issue of standby counsel and concluded that it did not have merit

23

on appeal.  "Tactical decisions [of counsel] are virtually
unchallengeable absent extraordinary circumstances" and

24

appellant failed to demonstrate any such circumstances here.
<u>See Ford</u>, 105 Nev. at 853, 784 P.2d at 953. The district court

25

concluded that appellate counsel was not ineffective for failing to
raise this issue on direct appeal and substantial evidence

26

supports that conclusion. Therefore, the district court did not err
in denying this claim.

27

28

#33-38, Ex. 128, at 8-9.

The state supreme court's rejection of the ineffective-assistance claim based upon the failure of appellate counsel to pursue a claim on direct appeal concerning standby counsel was neither contrary to nor an objectively unreasonable application of clearly established federal law.  No United States Supreme Court precedent holds that an accused who has elected to represent himself has a right also to standby counsel.  The Court instead has stated that a trial judge is not required to permit such "hybrid" representation.  *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984).  Long-established Ninth Circuit law accordingly holds that there is no federal constitutional right to the assistance of standby counsel.  *E.g., Locks v. Sumner*, 703 F.2d 403, 407-08 (9th Cir. 1983).  To the extent that the Supreme Court of Nevada held that Thurmond failed to demonstrate that the district court abused its discretion by declining to appoint standby counsel, the state supreme court's holding on that issue under Nevada state law – the only other applicable source of law in a state criminal trial on a issue not of constitutional dimension – is the end of the matter in that respect.  The Supreme Court of Nevada is the final arbiter of Nevada state law.

Respondents belatedly contend in the answer that the allegation in the underlying federal Ground 1 concerning an inadequate *Faretta* canvass was not exhausted.  As discussed previously herein, while the exhaustion defense may not be subject to waiver as a matter of substantive law, if respondents seek to have an exhaustion defense considered in the district court, they must comply with the Court's scheduling order.[42]

Reviewing this aspect of the ineffective-assistance claim *de novo*, the Court holds that petitioner cannot establish either deficient performance or resulting prejudice based upon appellate counsel's failure to raise a claim on direct appeal based upon an allegedly inadequate *Faretta* canvass.

Petitioner's conclusory allegation in the second amended petition does not establish how the *Faretta* canvass allegedly was inadequate.  Review of the state court record confirms that it was not.  The presiding state district judge conducted a thorough and searching

---

[42]See text, *supra*, at 3-4.

1 canvass covering 25 pages in the transcript, and the judge did not undertake merely

2 perfunctory consideration of whether to grant Thurmond's motion to represent himself at

3 trial.[43]

4       Petitioner urges in his first reply that his waiver of his right to counsel "rested on an

5 unforeseeable fact" because he was denied the right to present a complete defense because

6 he could not testify without awkwardness and he was not able to properly question and cross-

7 examine.[44]   However, the right to self-representation is not a right to effective self-

8 representation.   The state district court thoroughly canvassed Thurmond with regard to the

9 likely pitfalls of self-representation.  The court could not deny Thurmond's motion to represent

10 himself simply because it more likely than not was a bad idea.[45]   If following an effective

11 waiver of his right to counsel, petitioner thereafter proved the point, that is not a matter of

12 constitutional concern.

13       The underlying substantive claim as to the lack of an adequate *Faretta* canvass is

14 belied by the record and without merit, such that appellate counsel was not ineffective for

15 failing to raise it.

16       Respondents do not directly address petitioner's remaining allegation that counsel was

17 ineffective for failing to raise an issue on appeal based upon the state district court's alleged

18 failure to appoint "counsel or" standby counsel.  The Court reviews the claim *de novo*.  The

19 claim is clearly belied by the transcript of the proceeding in question, where petitioner asks

20 only for standby counsel.[46] There is absolutely nothing in the record in any sense stating that

21 Thurmond instead was attempting to withdraw his request that he represent himself and be

22 represented again by appointed counsel.

23

24      [43]See #28-6, Ex. 18.

25      [44]#54, at 7.

26      [45]*Cf. United States v. Hernandez*, 203 F.3d 614, 623 n.12 (9th Cir. 2000), *abrogated in part by Indiana
27 v. Edwards*, 554 U.S. 164 (2008)(neither a defendant's lack of technical legal competence nor the inability to
put on an effective defense constitutes a legitimate ground for denying the right of self-representation).

28      [46]#29-15, Ex. 30, at 8-9 (at ECF pages 4-5).  See also #27-1, at ECF pages 29-30 (minutes).

1    Ground 2 therefore does not provide a basis for federal habeas relief with regard to

2    petitioner's claim that counsel was ineffective for failing to raise federal Ground 1 on direct

3    appeal.

4    **Effective Assistance – Failure to Raise Ground 8**

5    Petitioner alleges that he was denied effective assistance of counsel because appellate

6    counsel did not raise the claim in federal Ground 8, which challenged the sufficiency of the

7    evidence on the conspiracy charge in Count I.   The Supreme Court of Nevada held that

8    petitioner could not establish either deficient performance or resulting prejudice from appellate

9    counsel's failure to pursue the claim.[47]   This Court has held on a *de novo* review that the

10   underlying substantive claim is without merit.   Petitioner accordingly cannot establish that the

11   state supreme court's rejection of the ineffective-assistance claim was either contrary to or

12   an unreasonable application of clearly established federal law.   The claim therefore does not

13   provide a basis for federal habeas relief.[48]

14   **Effective Assistance – Failure to Raise Ground 9(a)**

15   Petitioner alleges that he was denied effective assistance of counsel because appellate

16   counsel did not raise the claim in federal Ground 9(a), which alleged that he had a

17   constitutional right to be charged by grand jury indictment.   Respondents again raise a belated

18   exhaustion defense to the ineffective-assistance claim that was not included in the motion to

19   dismiss as required by the scheduling order.   It thus does not appear that the Supreme Court

20   of Nevada decided this ineffective-assistance claim on the merits.   This Court accordingly

21   reviews the claim *de novo* as to questions of law.   The Court dismissed the unexhausted

22   underlying substantive claim in Ground 9(a) for failure to present a colorable claim on the

23   merits under 28 U.S.C. § 2254(b)(2) because there is no constitutional right to be charged by

24   indictment. #48, at 7.   Appellate counsel neither provided deficient performance in not raising

25   _____

26   [47]#33-38, Ex. 128, at 12.

27   [48]Petitioner seeks to allege additional issues over and above the sufficiency issue in his first reply
     with regard to this portion of the ineffective-assistance claim.   A petitioner may not use a reply to allege

28   additional claims.  *Cacoperdo, supra.*

1  this baseless claim nor was there resulting prejudice.  This claim does not provide a basis for
2  federal habeas relief.[49]

3  ### *Effective Assistance – Failure to Raise Ground 9(b)*

4  Petitioner alleges that he was denied effective assistance of counsel because appellate
5  counsel did not raise the claim in federal Ground 9(b), which alleged that the criminal
6  complaint failed to cite the correct statute for the deadly weapon enhancement.  As discussed
7  *supra*: (a) the Supreme Court of Nevada held that petitioner could not establish either
8  deficient performance or resulting prejudice due to the failure to raise the underlying
9  substantive claim; and (b) this Court has rejected the substantive claim on *de novo* review as
10  lacking any merit.[50]  The state supreme court's rejection of the ineffective-assistance claim
11  thus clearly was neither contrary to nor an objectively unreasonable application of clearly
12  established federal law.  This claim does not provide a basis for federal habeas relief.

13  ### *Effective Assistance – Failure to Raise Ground 10*

14  Petitioner alleges that he was denied effective assistance of counsel because appellate
15  counsel did not raise the claim in federal Ground 10, which alleged that the warrant for the
16  wiretap of his wife's cell phone that he was using was based upon a perjured affidavit.  This
17  Court dismissed the underlying substantive claim in Ground 10 as not cognizable in federal
18  habeas corpus under *Stone v. Powell*, *supra*.[51]

19  The Supreme Court of Nevada rejected the ineffective-assistance claim presented to
20  that court, following an evidentiary hearing in the state district court, on the following grounds:

21  . . . [A]ppellant claimed that his appellate counsel was
22  ineffective for failing to argue that the officer who signed the
affidavit for the warrant authorizing the wiretap of appellant's
phone committed perjury.  Appellant claimed that, under 18
23  USCA Section 2518(1)(c), an officer must include a statement of

24  _____

25  [49]With regard to the ineffective-assistance claim as to both Grounds 9(a) and (b), petitioner seeks to
26  include allegations in his first reply that go beyond the substantive claims presented within Grounds 9(a) and
(b).  Petitioner cannot expand his claims in a reply.  *Cacoperdo, supra*.

27  [50]See text, *supra*, at 9-11.

28  [51]#48, at 6.

-29-

other investigative procedures along with the affidavit and application for a search warrant. Appellant appears to claim that, as the officer did not include a statement listing the other investigative procedures that were taken, the officer must have perjured himself by claiming there was criminal activity afoot. Appellant failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced. Appellant made only a bare allegation that the affiant officer perjured himself. Hargrove v. State, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984). Appellant failed to demonstrate that the officers violated the procedures for authorizing wiretaps in Nevada. See NRS 179.410 through NRS 179.515. As the warrant for the wiretap was obtained in a Nevada court, appellant failed to demonstrate that the laws regarding federally authorized wiretaps should have applied in the instant case. Further, appellant's appellate counsel testified at the evidentiary hearing that she reviewed the warrants and wiretap procedures conducted in this case and concluded that there were no appealable issues. "Tactical decisions [of counsel] are virtually unchallengeable absent extraordinary circumstances" and appellant failed to demonstrate any such circumstances here. See Ford, 105 Nev. at 853, 784 P.2d at 953. The district court concluded that appellate counsel was not ineffective for failing to raise this issue on direct appeal and substantial evidence supports that conclusion. Therefore, the district court did not err in denying this claim.

#33-38, Ex. 128, at 5.

Review under AEDPA of claims decided on the merits is restricted to the record before the state courts. Pinholster, supra. As found by the Supreme Court of Nevada, petitioner presented nothing more to the state courts – following an evidentiary hearing – than a bare claim that the officer committed perjury in the supporting affidavit. The state supreme court's rejection of an ineffective-assistance claim based on appellate counsel failing to raise such a bare underlying substantive claim was neither contrary to nor an objectively unreasonable application of clearly established federal law. The ineffective-assistance claim therefore does not provide a basis for federal habeas relief.

### Effective Assistance – Failure to Raise Ground 11

Petitioner alleges that he was denied effective assistance because appellate counsel did not raise the claim in federal Ground 11, which alleges that the state trial court allegedly failed to properly record and transcribe all relevant judicial proceedings.

////

-30-

The Supreme Court of Nevada rejected the ineffective-assistance claim presented to that court, following an evidentiary hearing in the state district court, on the following grounds:

> . . . [A]ppellant claimed that his trial counsel was ineffective for failing to argue that Judge Mosley and other court officers conspired to keep matters off the record so as to avoid appellate review. Appellant claimed that Detective Mogg talked with members of the jury during a break in the trial and that Judge Mosley refused to put this allegation on the record. Appellant failed to demonstrate that he was prejudiced. Appellant put forth only bare and naked allegations and thus, failed to demonstrate that there would have been a reasonable probability of altering the outcome on direct appeal had his appellate counsel included this claim. Hargrove, 100 Nev. at 502, 686 P.2d at 225. Therefore, the district court did not err in denying this claim.

#33-38, Ex. 128, at 11-12.

The state supreme court's rejection of the ineffective-assistance claim was neither contrary to nor an objectively unreasonable application of clearly established federal law. As noted previously, review under AEDPA of claims decided on the merits is restricted to the record before the state courts. *Pinholster, supra.* The state supreme court's rejection of an ineffective-assistance claim for failing to raise such a bare underlying substantive claim was neither contrary to nor an objectively unreasonable application of clearly established federal law. Moreover, this Court rejected the underlying substantive claim in Ground 11 on a *de novo* review. Following its review of the record material relied upon by petitioner in support of the claim, this Court similarly came to the conclusion that the claim was bare, conjectural and supported by nothing more than the active imagination of a convicted defendant seeking to bootstrap a claim from wholly innocuous passages in the record.[52] The ineffective-assistance claim therefore does not provide a basis for federal habeas relief.[53]

### *Effective Assistance – Failure to Raise Ground 12*

Petitioner alleges that he was denied effective assistance of counsel because appellate counsel did not raise on direct appeal the claim in federal Ground 12, which alleges that an

---

[52]See text, *supra*, at 12-14.

[53]Petitioner again seeks to add claims in his first reply that were not included in the ground as alleged in the pleadings, which he may not do. *Cacoperdo, supra.*

-31-

allegedly defective amended information permitted the State to change the theory of prosecution mid-trial.

The Supreme Court of Nevada rejected the claim presented to that court on the following grounds:

> [A]ppellant claimed that his appellate counsel was ineffective for failing to argue that the amended information allowed the State to change its theories of the crimes and did not provide notice of crimes charged. Appellant also claimed that the State changed theories of the crimes in the middle trial, which also did not provide him notice of the charges. Appellant failed to demonstrate that his appellate counsel's performance was ineffective or that he was prejudiced. Appellate counsel testified that she reviewed the charging documents and concluded that appellant was properly given notice of the charges and the State's theory of the crimes. "Tactical decisions [of, counsel] are virtually unchallengeable absent extraordinary circumstances" and appellant failed to demonstrate any such circumstances here. See Ford, 105 Nev. at 853, 784 P.2d at 953. A review of the record reveals that the State's theory was that appellant planned and helped to carry out the robberies. The State's theory of the crime was consistent throughout the trial and the charging documents provided notice of that theory. The district court concluded that appellate counsel was not ineffective for failing to raise this issue on direct appeal and substantial evidence supports that conclusion. Therefore, the district court did not err in denying this claim.

#33-38, Ex. 128, at 8.

This Court rejected Ground 12 on the merits on *de novo* review because petitioner's contentions were frivolous and factually baseless.[54] The state supreme court's rejection of the ineffective-assistance claim was neither contrary to nor an objectively unreasonable application of clearly established federal law. This claim provides no basis for habeas relief.

### Effective Assistance – Failure to Raise Ground 13

Petitioner alleges that he was denied effective assistance because appellate counsel did not raise the claim in federal Ground 13, which alleged that petitioner's right to confrontation was violated because the officer who applied for the warrant for the wiretap did not testify at trial.

---

[54]See text, *supra*, at 14-17.

The Supreme Court of Nevada rejected the ineffective-assistance claim presented to

that court on the following grounds:

> . . . [A]ppellant claimed that his appellate counsel was ineffective for failing to argue that his right to confrontation was violated because the officer who applied for the search warrant for the wiretap never testified at trial. Appellant appeared to further claim that the information obtained through the wiretap was inadmissible because the officer who sought the warrant did not testify. Appellant failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced. Pursuant to NRS 179.465(1), any law enforcement officer who gains knowledge from a wire intercept may share that knowledge with another law enforcement officer. At trial, Detective Clifford Mogg testified that while he did not apply for the warrant, he was the lead detective in this case and had reviewed all of the wiretap evidence. As such, appellant failed to demonstrate that the testifying officers should not have been allowed to testify concerning the wiretap evidence or that the wiretap evidence should not have been admitted. Further, appellant thoroughly cross-examined Detective Mogg and challenged the legality of the wiretaps in a pretrial motion to suppress. Thus, appellant failed to demonstrate that his right to confrontation was violated. The district court concluded that appellate counsel was not ineffective for failing to raise this issue on direct appeal and substantial evidence supports that conclusion. Therefore, the district court did not err in denying this claim.

#33-38, Ex. 128, at 4-5.

Petitioner, who has the burden of persuasion on federal habeas review, has not cited

any – apposite – United States Supreme Court authority establishing that he was denied a

right of confrontation because the officer who applied for the search warrant did not testify.

He accordingly has failed to demonstrate on deferential AEDPA review that the state supreme

court's rejection of his ineffective-assistance claim was either contrary to or an unreasonable

application of clearly established federal law. This claim therefore does not provide a basis

for federal habeas relief.

### Effective Assistance – Failure to Raise Ground 14

Petitioner alleges that he was denied effective assistance because appellate counsel

did not raise the claim in federal Ground 14 on direct appeal. In Ground 14, petitioner alleged

that he was subjected to an illegal search and seizure and was denied rights to due process

and a fair trial in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments because the

fact that the May 19, 2003, charge was dismissed establishes that there was no probable

cause to arrest him thereafter.  Respondents again raise a belated exhaustion defense that

was not included in the motion to dismiss as required by the scheduling order.  It thus does

not appear that the Supreme Court of Nevada decided this ineffective-assistance claim on

the merits.  This Court accordingly reviews the claim *de novo* as to questions of law.  The

Court notes that it dismissed the underlying substantive claim in Ground 14 as not cognizable

in federal habeas corpus under *Stone v. Powell*, *supra*.[55]

On a *de novo* review, the claim clearly lacks merit.  On direct appeal, the Supreme

Court of Nevada in fact addressed a claim that petitioner's statements should have been

suppressed as having been the fruit of an allegedly unlawful arrest because the May 19,

2003, charge was dismissed pretrial.  The court held:

> Thurmond also argues his statements should have been
> suppressed as the fruit of an unlawful arrest. We disagree.
> Thurmond contends that Detective Mogg lacked probable cause
> to arrest him for the May 19, 2003 conspiracy to commit robbery
> because that conspiracy charge was dismissed pretrial. However,
> Detective Mogg testified that he had probable cause to arrest
> Thurmond for the April 24, 2003 conspiracy. Thurmond does not
> argue that Mogg lacked probable cause to arrest him for that
> charge.

#33-1, Ex. 92, at 4.  Petitioner can establish neither deficient performance nor resulting

prejudice based on an alleged failure to raise an issue that the state supreme court actually

considered on direct appeal.  The state high court's rejection of the premise that there was

no probable cause for the arrest further establishes beyond peradventure that petitioner

cannot prevail on this ineffective-assistance claim.  The claim provides no basis for relief.[56]

### Effective Assistance – Failure to Raise Ground 15

Petitioner alleges that he was denied effective assistance because appellate counsel

did not raise the claim in federal Ground 15, which alleges that the trial court included a flight

instruction that allegedly was not supported by the trial evidence.  As discussed *supra*: (a) the

---

[55]#48, at 6.

[56]Petitioner argued a different claim in the first reply, which he may not do.  *Cacoperdo, supra*.

-34-

1  Supreme Court of Nevada held that petitioner could not establish either deficient performance

2  or resulting prejudice due to the failure to raise the underlying substantive claims as to alleged

3  jury instruction error; and (b) this Court has rejected the substantive claim in Ground 15 on

4  *de novo* review as being without merit.[57]   The state supreme court's rejection of the

5  ineffective-assistance claim thus was neither contrary to nor an objectively unreasonable

6  application of clearly established federal law.  This claim does not provide a basis for federal

7  habeas relief.[58]

8  ***Effective Assistance – Failure to Raise Ground 16***

9  Petitioner alleges that he was denied effective assistance because appellate counsel

10  did not raise the claim in federal Ground 16, which seeks relief based upon alleged

11  cumulative error by the trial court.

12  The Supreme Court of Nevada rejected the claim presented to that court on the

13  following basis:

14  . . . [A]ppellant claimed that his appellate counsel was
ineffective for failing to argue that appellant was entitled to relief

15  due to cumulative error. Appellant failed to demonstrate that . . .
he was prejudiced. As appellant failed to demonstrate error, he

16  failed to demonstrate that there was a reasonable probability that
the outcome of his direct appeal would have been different had

17  this claim been raised on direct appeal. Therefore, the district
court did not err in denying this claim.

18

19  #33-38, Ex. 128, at 13.

20  The state supreme court's rejection of the ineffective-assistance claim was neither

21  contrary to nor an unreasonable application of clearly established federal law.  Following the

22  Court's review herein, much of which has been on a *de novo* basis, the Court fully concurs

23  with the state supreme court's assessment.  There was no error to cumulate.

24  This claim therefore does not provide a basis for federal habeas relief.

25

26  _____

27  [57]See text, *supra*, at 17-19 & n.27.

28  [58]Petitioner once again argued multiple additional claims in the first reply with respect to this IAC
claim, which he may not do.  *Cacoperdo, supra.*

-35-

1     ***Effective Assistance – Failure to Raise Ground 17***

2         Given that there is no Ground 17 in the second amended petition, Thurmond presents

3     no viable claim that appellate counsel was ineffective in this regard.

4         Accordingly, Ground 2, in its entirety, does not provide a basis for federal habeas relief.

5     The petition will be dismissed with prejudice on the merits, as none of the grounds that

6     remained before the Court for decision provide a basis for relief.

7         ***Consideration of Possible Issuance of a Certificate of Appealability***

8         Under Rule 11 of the Rules Governing Section 2254 Cases, the Court must issue or

9     deny a certificate of appealability (COA) when it enters a final order adverse to petitioner.  As

10    to the claims rejected by on the merits, under 28 U.S.C. § 2253(c), a petitioner must make a

11    "substantial showing of the denial of a constitutional right" in order to obtain a certificate of

12    appealability.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Hiivala v. Wood*, 195 F.3d

13    1098, 1104 (9th Cir. 1999).  To satisfy this standard, the petitioner, *inter alia*, "must

14    demonstrate that reasonable jurists would find the district court's assessment of the

15    constitutional claim debatable or wrong."  *Slack*, 529 U.S. at 484.

16        Jurists of reason would not find the district court's rejection of the remaining grounds

17    on the merits to be debatable or wrong.  While this order has been lengthy due to the number

18    of claims presented, the claims all clearly are without merit.

19        Following the order in which the claims were discussed *supra*, jurists of reason would

20    not find the Court's rejection of Ground 7 on *de novo* review to be debatable or wrong.

21    Petitioner alleges that the jury was allowed to deliberate while in possession of wiretap

22    recordings that were not admitted into evidence and which "may" have contained other bad

23    act evidence.  Petitioner's allegations are belied by the record and ultimately are grounded

24    on a "mystery" Exhibit "Z1" which in context clearly is Exhibit "71" – with the "Z" being either

25    a typographical error or simply the result of a condensed trial transcript being copied multiple

26    times over.  **See text, *supra*, at 3-6.**

27        Jurists of reason would not find the Court's rejection of Ground 8 on *de novo* review

28    to be debatable or wrong.  Petitioner alleges that the evidence was insufficient on the robbery

-36-

conspiracy charge in Count I.  Petitioner's claim is grounded on the frivolous proposition that the State was required to present direct evidence of a specific conversation with an identified specific individual agreeing to commit the robbery in order to prove the conspiracy.  There was ample evidence to support the conspiracy count.  **See text, *supra*, at 6-8.**

Jurists of reason would not find the Court's rejection of Ground 9(b) on *de novo* review to be debatable or wrong.[59]  Petitioner alleges that the complaint was defective because it failed to state the correct citation for the deadly weapon enhancement statute.  The claim as alleged is belied by the record given that the complaint actually cited the correct statute.  The citation error in the information and amended information in any event did not render the charging instruments constitutionally defective.  It is noteworthy that, consistent with long-established United States Supreme Court precedent, Rule 7(c)(2) of the Federal Rules of Criminal Procedure expressly provides that a citation error in a charging instrument is not a ground to dismiss a charge or reverse a conviction.  Petitioner clearly was on notice that he was being charged with the weapon enhancement, on what factual basis, and with what potential exposure.  **See text, *supra*, at 9-11.**

Jurists of reason would not find the Court's rejection of Ground 11 on *de novo* review to be debatable or wrong.  Petitioner's allegations of unrecorded proceedings and possible jury tampering are based upon an even more baseless conjectural reading of otherwise innocuous record passages than was his mystery exhibit argument as to Ground 7.  **See text, *supra*, at 12-14.**

Jurists of reason would not find the rejection of Ground 15 on *de novo* review to be debatable or wrong.  Petitioner's allegation that a flight instruction was not supported by the evidence is belied by the trial record, which included evidence of flight by an accomplice.  What at best would have been a state law instructional error in any event would not have risen to the level of a federal constitutional violation.  **See text, *supra*, at 17-19.**

---

[59]Ground 9(a) previously was dismissed with prejudice under 28 U.S.C. § 2254(b)(2) as lacking any colorable merit.

1     Jurists of reason would not find the Court's rejection of the multiple claims of ineffective

2  assistance of appellate counsel in Ground 2 addressed herein to be debatable or wrong.

3     The state supreme court's rejection of an ineffective-assistance claim based upon

4  direct appeal counsel failing to "federalize" specified claims on direct appeal was neither

5  contrary to nor an unreasonable application of clearly established federal law as determined

6  by the United States Supreme Court.  There is no apposite Supreme Court precedent clearly

7  establishing that counsel on a state court direct criminal appeal can be found to have provided

8  ineffective assistance for failing to preserve claims for later federal proceedings separate and

9  apart from their potential efficacy in the direct appeal itself.  There was not a reasonable

10  probability that federalizing substantive claims corresponding to federal Grounds 3 and 4

11  would have led to a different outcome on direct appeal.  The claims in Grounds 5 and 6 in fact

12  were presented as federal claims on direct appeal.  No state law claim corresponding to

13  Ground 7 was presented on direct appeal to federalize.  Ground 7 in any event was without

14  merit on *de novo* review, such that counsel was not ineffective in any sense with respect to

15  the substantive claim.  **See text, *supra*, at 20-24.**

16     With regard to the failure to raise federal Ground 1 on direct appeal, petitioner had no

17  federal constitutional right to appointment of standby counsel; the *Faretta* canvass was not

18  inadequate; petitioner's waiver of his right to counsel was not rendered inadequate due to his

19  later deficiencies in representing himself, given that *Faretta* does not guarantee effective self-

20  representation; and petitioner's claim that he later asked for full counsel rather than merely

21  standby counsel is belied by the record.  **See text, *supra*, at 25-28.**

22     With regard to the failure to raise federal Grounds 8, 9(a), and 9(b) on direct appeal,

23  this Court held on *de novo* review that Grounds 8 and 9(b) were without merit and it further

24  previously dismissed Ground 9(a) for lack of colorable merit.  **See text, *supra*, at 28-29.**

25     With regard to the failure to raise federal Ground 10 on direct appeal, the state

26  supreme court's rejection of the conclusory and bare claim presented to that court was neither

27  contrary to nor an unreasonable application of clearly established federal law.  **See text,**

28  ***supra*, at 29-30.**

1    With regard to the failure to raise federal Ground 11 on direct appeal, the state
2 supreme court's rejection of the conclusory and bare claim presented to that court was neither
3 contrary to nor an unreasonable application of clearly established federal law.  Moreover, this
4 Court rejected the underlying substantive claim on *de novo* review.  **See text, *supra*, at 30-**
5 **31.**

6    With regard to the failure to raise federal Ground 12 on direct appeal, the state
7 supreme court's rejection of the claim presented to that court was neither contrary to nor an
8 unreasonable application of clearly established federal law given that this Court rejected
9 Ground 12 as frivolous and factually baseless.  **See text, *supra*, at 31-32.**

10    With regard to the failure to raise Ground 13 on direct appeal, the state supreme
11 court's rejection of the claim presented to that court was neither contrary to nor an
12 unreasonable application of clearly established federal law given that petitioner has not cited
13 any apposite Supreme Court law holding that the officer who applied for the search warrant
14 must testify at trial.  **See text, *supra*, at 32-33.**

15    With regard to appellate counsel's alleged failure to raise Ground 14 on direct appeal,
16 the state supreme court in fact addressed the substantive claim on direct appeal and it further
17 rejected petitioner's moving premise for the substantive claim.  He therefore cannot establish
18 ineffective assistance of appellate counsel in this regard.  **See text, *supra*, at 33-34.**

19    With regard to the failure to raise Ground 15 on direct appeal, this Court rejected the
20 underlying substantive claim on a *de novo* review; and the state supreme court's rejection of
21 the ineffective assistance claim clearly was neither contrary to nor an unreasonable
22 application of clearly established federal law.  **See text, *supra*, at 34-35.**

23    With regard to the failure to raise the cumulative error claim in Ground 16 on direct
24 appeal, petitioner cannot demonstrate ineffective assistance of appellate counsel in this
25 regard given his failure to otherwise establish a viable claim of error on either state or federal
26 review.  **See text, *supra*, at 35.**

27    With regard to the failure to raise federal Ground 17 on direct appeal, there is no
28 Ground 17 in the second amended petition.  **See text, supra, at 36.**

1    A certificate of appealability accordingly is denied as to all claims, including with regard

2  to any antecedent procedural rulings herein.

3    IT THEREFORE IS ORDERED that all remaining claims in the petition are DENIED

4  on the merits and that this action shall be DISMISSED with prejudice.

5    IT FURTHER IS ORDERED that a certificate of appealability is DENIED.  **See text,**

6  **_supra_, at 36-40.**

7    The Clerk of Court shall enter final judgment accordingly in favor of respondents and

8  against petitioner, dismissing this action with prejudice.

9    DATED:    August 26, 2014.

10

11

12

13                         ROBERT C. JONES
                          United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-40-